IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CHELSA BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-395-KPJ |
| | § | |
| THE RENY COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant The Reny Company's ("Defendant") Partial Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support (the "Motion") (Dkt. 22). To date, Plaintiff Chelsa Brown ("Ms. Brown") has not filed a response to the Motion. *See* Dkt. 42 (Defendant's Notice of No Response). Having considered the Motion, the pleadings, and the relevant law, the Motion (Dkt. 22) is **granted in part and denied in part**.

**I.   BACKGROUND**

On April 27, 2021, Ms. Brown, proceeding *pro se*, commenced this lawsuit against her former employer, Defendant. *See* Dkt. 3. On June 14, 2021, Ms. Brown amended her complaint (the "First Amended Complaint"). *See* Dkt. 16. The First Amended Complaint is the live complaint in this matter.[1] *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint[.]").

---

[1] Although Ms. Brown referenced certain exhibits in her First Amended Complaint, no exhibits were attached to the pleading. The Court's review, therefore, is limited to the First Amended Complaint. The Court notes that two months after she filed the First Amended Complaint, Ms. Brown filed documents that she sought to attach to the First Amended Complaint. *See* Dkt. 21. Because these documents were not referenced in the First Amended Complaint, the Court did not consider them. But even if these documents had been considered, they would not alter the Court's analysis.

Ms. Brown began working for Defendant on November 21, 2019. *See* Dkt. 16 at 2. On October 5, 2020, Ms. Brown alleges she went to the emergency room, where she was diagnosed with COVID-19 and pneumonia in both lungs. *Id*. Ms. Brown contacted Defendant to apprise them of her diagnosis and "her inability to work from the office." *Id*. Approximately ten days later, on October 16, 2020, Ms. Brown alleges she had a follow-up appointment with a "Teladoc physician," during which she reported still having COVID-19 symptoms. *Id*. Ms. Brown alleges she asked the Teladoc physician when she could return to work, and the physician responded that she was still "too sick" and needed to follow up with her primary care doctor. *Id*. Ms. Brown, therefore, scheduled an appointment for October 24, 2020, with her primary care doctor. *Id*. In the meantime, on October 19, 2020, Ms. Brown alleges she emailed Christina Hartwell, who worked for Defendant's Human Resources department, to inform her that she would need to apply for short-term disability "due [to] not being able to return back to work due to illness." *Id*. According to Ms. Brown, Ms. Hartwell responded to her email and indicated that she would send the short-term disability application to Ms. Brown. *Id*.

On December 24, 2020, Ms. Brown alleges she received a letter from Defendant terminating her employment, effective December 18, 2020, due to "job abandonment." *Id*. The letter further directed Ms. Brown to return her company laptop within three days of the termination date. *Id*. at 2–3. Instead of waiting for her to return the laptop, Ms. Brown claims that Defendant filed a "false [police] report against [Ms. Brown] . . . for theft of a company laptop." *Id*. at 3. Ms. Brown alleges "this was an act of retaliation from [Defendant's] Chief Executive [O]fficer and Chief Financial Officer" since they had previously approved her request for remote

working.[2] *Id*. In addition, Ms. Brown alleges Defendant "was reluctant to pay her" and did not accept her doctor's report[3] that she "was having severe breathing issues, bronchitis, and headaches" because the report "did not categorically state that [Ms. Brown] needed to quarantine." *Id*.

### A. Ms. Brown's Claims

In the First Amended Complaint, Ms. Brown asserts the following eight claims against Defendant for "wrongful terminat[ion]" of her employment:

1. Violations of the Americans with Disabilities Act of 1990 (the "ADA"), Families First Coronavirus Response Act (the "FFCRA"), and the Civil Rights Act of 1964;

2. Discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII");

3. Wrongful Termination in violation of "Section 385 Fair Work Act 2009";

4. Violation of Due Process under the Equal Protection Clause of the Fourteenth Amendment;

5. Intentional Infliction of Emotional Distress;

6. Retaliation;

7. Defamation;

8. Violation of the Family and Medical Leave Act (the "FMLA").

*See* Dkt. 16 at 3–7.

### B. Defendant's Motion to Dismiss

On June 28, 2021, Defendant filed a Partial Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support (the "Motion") (Dkt. 22). The Motion seeks dismissal of all

---

[2] The First Amended Complaint is silent as to whether the approval for remote working occurred before or after Ms. Brown's COVID-19 diagnosis.

[3] The First Amended Complaint does not identify the doctor or the date of the report.

claims except for Ms. Brown's defamation and intentional infliction of emotional distress claims. *See id*. On November 24, 2021, Defendant notified the Court that Ms. Brown failed to timely file a response to the Motion. *See* Dkt. 42 (Defendant's Notice of No Response). To date, Ms. Brown has not filed a response.

## II.     APPLICABLE LEGAL STANDARDS

### A.  Rule 12(b)(6) Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows the defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are viewed with disfavor, the court must accept as true all well-pleaded facts, "even if doubtful or suspect," contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020); *see Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) ("We take the well-pleaded factual allegations in the complaint as true, but we do not credit conclusory allegations or allegations that merely restate the legal elements of a claim."). A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *See Ashcroft*, 556 U.S. at 679. The well-pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"The filings of a *pro se* litigant are to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019) (cleaned up). Although *pro se* plaintiffs are held "to a more lenient standard than lawyers when analyzing complaints, . . . *pro se* plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." *Chhim*, 836 F.3d at 469 (emphasis added and internal citation omitted).

### III.   ANALYSIS

**A.   Wrongful Termination in violation of "Section 385 [of the] Fair Work Act"**

In the First Amended Complaint, Ms. Brown asserts a claim for wrongful termination in violation of "Section 385 [of the] Fair Work Act 2009." *See* Dkt. 16 at 4–5. Ms. Brown does not, however, provide a citation for the Fair Work Act of 2009. *Id*. Defendant argues that dismissal of this claim is appropriate because it is unclear under what statute Ms. Brown is seeking relief, as there is no federal or Texas law entitled "Fair Work Act 2009." *See* Dkt. 22 at 11–12. The Court agrees that dismissal is appropriate, as the Court has not found any federal or Texas law under this name. *See Brown v. Cooley et al.*, No. 3:19-cv-29, Dkt. 6 at 3 (N.D. Tex. Feb. 4, 2019), *R. & R. adopted*, 2019 WL 2209122 (N.D. Tex. May 21, 2019) (finding the plaintiff failed to state a plausible claim for relief under the "Fair Work Act" because the court "found no federal or State of Texas 'Fair Work Act'").

Defendant further argues Ms. Brown may be seeking relief pursuant to an Australian statute entitled "Fair Work Act 2009," which includes a "Section 385" for "unfair dismissals." Dkt. 22 at 12. If Ms. Brown is in fact seeking relief under this foreign statute, the Court agrees with Defendant that Ms. Brown has not demonstrated "how this Australian statute applies to her

5

employment dispute with her American employer." *See* Dkt. 22 at 12. Nor has Ms. Brown set forth the basis for the Court's jurisdiction over a claim brought under the Australian statute.

Therefore, the Court dismisses Ms. Brown's claim for wrongful termination in violation of "Section 385 [of the] Fair Work Act 2009."

### B. Due Process

Defendant asserts Ms. Brown's claim for violations of due process under the "Equal Protection Clause of the Fourteenth Amendment to the United States Constitution" and 42 U.S.C. § 1983 fails to state a claim for relief. *See* Dkt. 22 at 12–13. The Court agrees.

At first glance, Ms. Brown's due process claim fails to pass muster under Rule 12(b)(6) because the claim consists of two short conclusory assertions: (1) "[t]hrough wrongful termination[,]" Defendant violated Ms. Brown's right to due process; and (2) Defendant "denied [Ms. Brown] the fundamental rights of following the right process throughout the entire incident." *See* Dkt. 16 at 5; *see Chhim*, 836 F.3d at 469 ("We take the well-pleaded factual allegations in the complaint as true, but we do not credit conclusory allegations or allegations that merely restate the legal elements of a claim.").

Furthermore, Ms. Brown has not stated a cognizable claim against Defendant for violation of her due process rights due to her failure to show Defendant's alleged conduct constituted state action. "[B]ecause the Fourteenth Amendment protects liberty and property interests only against invasion by a state, a section 1983 plaintiff, alleging the deprivation of Due Process under the Fourteenth Amendment, must . . . show that state action caused his injury. In such cases, the 'under color of law' and state action inquiries merge into one." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 421 (5th Cir. 2004) (quoting *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999)). "[S]tate action requires *both* an alleged constitutional deprivation

6

caused by the exercise of some right or privilege created by the State or by rule of conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (cleaned up) (emphasis in original). Here, the First Amended Complaint is void of any assertion that Defendant is a state actor. Nor does Ms. Brown allege that Defendant is a private actor whose actions are fairly attributable to the state such that it can be treated as a state actor. *See Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982) ("Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State."); *see also Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–297 (2001) (providing examples). Because Ms. Brown only alleges that Defendant is a private entity, not a state actor, Defendant's alleged conduct could not have resulted in a violation of her due process rights. Thus, Ms. Brown's due process claim fails as a matter of law and must be dismissed.

### C. ADA and FFCRA[4]

#### 1. ADA

Defendant argues Ms. Brown's ADA claim is subject to dismissal because Ms. Brown failed to adequately plead that "she has or had a disability within the meaning of the ADA." *See* Dkt. 22 at 18. "The ADA prohibits discrimination against a qualified individual because of a disability 'in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999) (quoting 42 U.S.C. §

---

[4] The ADA and FFCRA claims were combined within Ms. Brown's "First Claim for Relief" in the First Amended Complaint. *See* Dkt. 16 at 3. The "First Claim for Relief" also includes a discrimination claim under the "Civil Rights Act of 1964." *Id*. This discrimination claim, however, was also separately raised in Ms. Brown's "Second Claim for Relief." The Court will therefore address the discrimination claim separately in its analysis.

12112(a)). In order to make a prima facie case of ADA disability discrimination, a plaintiff must establish that "(1) she suffers from a disability or is regarded as disabled; (2) she is qualified for the job despite the disability; (3) she was subjected to an adverse employment action due to her disability; and (4) she was replaced by a non-disabled person or treated less favorably than non-disabled employees." *Milton v. Tex. Dep't of Crim. Just.*, 707 F.3d 570, 573 (5th Cir. 2013) (quoting *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995)) (cleaned up). In addition, one subset of ADA discrimination claims are failure-to-accommodate claims. An employer violates the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *See* 42 U.S.C. § 12112(b)(5)(A). To prevail on a failure to accommodate claim, the plaintiff must show that: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013).

The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" *See* 42 U.S.C. § 12102(1). Under the 2008 amendments to the ADA, an individual is "regarded as" disabled when she is perceived as having a physical or mental impairment, regardless of whether the impairment actually exists or is perceived to limit a major life activity. *Id.* § 12102(3)(A). An individual cannot be "regarded as having such an impairment," however, if the impairment is "transitory and minor." *Id.* §

12102(3)(B). "A transitory impairment is an impairment with an actual or expected duration of 6 months or less." *Id.*

Defendant's argument that Ms. Brown fails to allege a disability under the ADA ignores Ms. Brown's allegation in the First Amended Complaint that her COVID-19 diagnosis was a disability within the meaning of the ADA because it "substantially limit[ed] at least one of [her] major life activities." *See* Dkt. 16 at 4. The Court must accept Plaintiff's allegations as true at the motion to dismiss stage. The Court also notes that there is disagreement amongst district courts regarding whether COVID-19 is an ADA-qualifying disability or impairment. *See Alvarado v. ValCap Grp., LLC*, No. 3:21-cv-1830, 2022 WL 19686, at *7 n.13 (N.D. Tex. Jan. 13, 2022) (collecting cases). Being mindful of the broad scope of protections available under the ADA and the Court's duty to liberally construe the First Amended Complaint due to Ms. Brown's status as a *pro se* litigant, the Court denies the Motion on this issue.

2. FFCRA

Defendant also contends Ms. Brown's FFCRA claim is subject to dismissal. *See* Dkt. 22 at 18. "[I]n response to the rapid proliferation of COVID-19 in the United States, on March 18, 2020, Congress enacted, and the President signed into law," the FFCRA. *See ESI/Emp. Sols., L.P. v. City of Dallas*, 450 F. Supp. 3d 700, 739 n.19 (E.D. Tex. 2020). "The FFCRA, which applies to private sector employers that employ fewer than 500 employees and some public sector employers, provides up to 80 hours of paid sick leave to workers who are ill, quarantined, or seeking treatment as a result of COVID-19, or caring for those who are sick or quarantined as a result of COVID-19." *Id*. "Further, the FFCRA prohibits employers from discharging or discriminating against employees who take leave under the FFCRA." *Price v. Ajinomoto Foods N. Am., Inc.*, No. 3:20-cv-00253, 2021 WL 5068530, at *2 (N.D. Miss. Nov. 1, 2021). These

provisions of the FFCRA were in effect until December 31, 2020. *Id*. The Emergency Paid Sick Leave Act ("EPSLA"), "which requires employers to provide up to two weeks of paid sick leave for employees who are or may be infected with COVID-19, is a component of the FFCRA." *Alvarado*, 2022 WL 19686, at *3. A second component of the FFCRA is the Emergency Family and Medical Leave Expansion Act ("EFMLEA"), which expanded the FMLA to allow "certain employees to take up to twelve weeks of expanded family and medical leave, ten of which are paid, for specified reasons related to COVID-19." *See* Paid Leave Under the Families First Coronavirus Response Act, 85 Fed. Reg. 19,326 (Apr. 6, 2020) (to be codified at 29 C.F.R. pt. 826), 2020 WL 1663275.

Here, Ms. Brown refers only in passing to the FFCRA in the First Amended Complaint, and does not specify whether she is seeking relief under the EPLSA or EFMLEA. The Court agrees with Defendant that Ms. Brown "fails to plead sufficient facts that show what provisions of the statute [Defendant] allegedly violated." *See* Dkt. 22 at 18. The FFCRA claim is, therefore, subject to dismissal.

### D. Retaliation

In the First Amended Complaint, Ms. Brown asserts a retaliation claim pursuant to several statutes that she identifies as "Section[] 704(a) of Title VII, Section 4(d) of the ADEA [the Age Discrimination in Employment Act], Section 503(a) of the ADA [Americans with Disabilities Act] and Section 207(f) of GINA [Genetic Information Nondiscrimination Act][.]" *See* Dkt. 16 at 6. Defendant argues Ms. Brown has failed to state a plausible claim for relief as to her retaliation claim under these various statutes. *See* Dkt. 22 at 15–16. With the exception of her ADA retaliation claim, the Court agrees with Defendant and finds that Ms. Brown has failed to state a claim for relief.

Turning first to Ms. Brown's retaliation claim under the ADA, a plaintiff establishes a prima face case of retaliation under the ADA by showing "(1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *See Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008). For purposes of an ADA retaliation claim, the plaintiff "need not show that she suffers from an actual disability. Instead, a reasonable, good faith belief that the statute has been violated suffices." *Id*. (internal quotation marks and citation omitted). Here, as noted earlier, Ms. Brown alleges her COVID-19 diagnosis was a disability within the meaning of the ADA because it "substantially limit[ed] at least one of [her] major life activities." *See* Dkt. 16 at 4; *see also Mann v. La. High Sch. Athletic Ass'n*, 535 F. App'x 405, 411–12 (5th Cir. 2013) ("Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." (internal citation omitted)). Specifically as to her ADA retaliation claim, Ms. Brown asserts that Defendant retaliated against her by terminating her position after she sought an accommodation to work from home due to COVID-19. *See* Dkt. 16 at 6. The request for accommodations was made sometime between October 19, 2020, and December 18, 2020, the date her termination was effective. *Id*. at 2.

Defendant argues Ms. Brown's ADA retaliation claim is subject to dismissal because she fails to allege that she engaged in protected activity or the requisite causal connection between any protected activity and the adverse employment action.[5] *See* Dkt. 22 at 15–16. The Court disagrees. Ms. Brown's alleged protected activity was her request for accommodation. The Fifth Circuit has routinely held that a request for accommodation may qualify as protected activity for

---

[5] For purposes of this claim, the Court will assume without deciding that COVID-19 is an ADA-qualifying disability or impairment because Defendant's arguments on the ADA retaliation claim do not challenge this assertion by Ms. Brown.

11

purposes of a retaliation claim. *See, e.g.*, *Tabatchnik*, 262 F. App'x at 676 ("It is undisputed that making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity."). Ms. Brown's allegations regarding the temporal proximity of her request for accommodation and her termination may show the requisite causal connection for her ADA retaliation claim. *Feist*, 730 F.3d at 454 ("A plaintiff alleging retaliation may satisfy the causal connection element by showing '[c]lose timing between an employee's protected activity and an adverse action against him.'"). Because Ms. Brown has pled sufficient facts as to the protected activity and causal connection elements of her ADA retaliation claim, the Court finds that Defendant's arguments for dismissal of Ms. Brown's ADA retaliation claim lack merit.

As to Ms. Brown's ADEA retaliation claim, the antiretaliation provision of the ADEA "protects employees from retaliation for opposing acts of age discrimination, or for charging, testifying, assisting, or participating in any manner in an investigation, proceeding, or litigation under the ADEA." *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1225 (5th Cir. 1996). "A plaintiff establishes a prima facie case of retaliation under the ADEA by showing: (1) that he engaged in activity protected by the ADEA; (2) that there was an adverse employment action; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision." *Id*. at 1225–26. Here, the First Amended Complaint does not contain any allegation that Ms. Brown "oppos[ed] acts of age discrimination" or that she participated in any manner in a proceeding under the ADEA. *See Holt*, 89 F.3d at 1225. There are also no age-related allegations in the First Amended Complaint. Thus, because Ms. Brown has not alleged that she engaged in activity protected by the ADEA, her retaliation claim under the ADEA is dismissed.

Likewise, Ms. Brown's retaliation claim under Title VII is subject to dismissal on the same ground. "To state a claim for retaliation under Title VII, a plaintiff must show that (1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Cabral v. Brennan*, 853 F.3d 763, 766–67 (5th Cir. 2017) (internal quotation marks and citation omitted). Protected activity under Title VII "is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (internal quotation marks omitted). "Title VII does not protect opposition to all forms of unscrupulous conduct." *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010). "Title VII protects only opposition to discrimination based on 'race, color, religion, sex, or national origin.'" *Id.* (quoting 42 U.S.C. § 2000e-2(a)(1)). "Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Id*. Here, Ms. Brown does not allege she was retaliated against for opposing practices rendered unlawful by Title VII. Because Ms. Brown does not assert that she engaged in protected activity, her retaliation claim under Title VII is subject to dismissal.

Next, the Court considers Ms. Brown's retaliation claim under GINA. "GINA prohibits an employer from discriminating or taking adverse actions against an employee 'because of genetic information with respect to the employee.'" *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 826 (5th Cir. 2015) (quoting 42 U.S.C. § 2000ff–1(a)(1), (2)). "GINA provides a private right of action, incorporating the enforcement and remedies procedures of Title VII[.]" *Id*. "Borrowing from the Title VII context," a plaintiff asserting a retaliation claim under GINA

13

must show "(1) that he engaged in protected activity, (2) that he suffered an adverse employment action, and (3) that a causal link existed between the protected activity and the adverse action." *Id*. at 827 (internal quotation marks and citation omitted). Here, the First Amended Complaint does not include any allegation that Ms. Brown engaged in GINA-protected activity. Ms. Brown has simply not pled any facts implicating GINA. Thus, like her ADEA and Title VII retaliation claims, the Court finds that Ms. Brown's retaliation claim under GINA must be dismissed due to her failure to assert that she engaged in protected activity. *See, e.g.*, *Green v. Whataburger Restaurants LLC*, No. 5:17-cv-243, 2018 WL 6252533, at *3 (W.D. Tex. Oct. 9, 2018) (granting motion to dismiss where the allegations in the complaint did not "allow the Court to draw the reasonable inference that Defendant discriminated and retaliated against [the plaintiff] because of genetic information with respect to [the plaintiff]" (cleaned up)).

In sum, Ms. Brown's ADA retaliation claim survives Rule 12(b)(6) scrutiny. Her claims of retaliation under the ADEA, Title VII, and GINA do not withstand scrutiny under Rule 12(b)(6), and are thus, dismissed.

**E. Discrimination under Title VII of the Civil Rights Act of 1964**

Next, Defendant seeks to dismiss Ms. Brown's Title VII claim. *See* Dkt. 22 at 9–11. In support of her Title VII claim, Ms. Brown only recites general principles for Title VII claims, such as what the statute covers, in the First Amended Complaint. *See* Dkt. 16 at 4. Ms. Brown makes no specific factual allegations to support her Title VII claim, therefore leaving the Court to guess at the basis for this claim. Liberal construction does not require the Court to "conjure up unpled allegations" to save a *pro se* complaint. *Govea v. ATF*, 207 F. App'x 369, 372 (5th Cir. 2006) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)). As pled, Ms. Brown has failed to state a claim for relief under Title VII.

The Court additionally notes Ms. Brown's Title VII claim includes assertions that she is pursuing a "'class of one' theory under the Equal Protection Clause of the XIV Amendment," that she "was intentionally treated differently than similarly situated employees," and "there was no rational basis for the difference in treatment." *See* Dkt. 16 at 4. "An equal protection claim that is premised on differential treatment but not based on membership in a suspect class or the infringement of a fundamental right may be cognizable as a so-called 'class of one.'" *Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016) (internal citation omitted). "We review such claims under a two-prong test: the plaintiff must show that (1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Id*. The First Amended Complaint, however, does not reference any similarly situated individual. Thus, Ms. Brown has failed to plausibly state a claim for relief under a class-of-one claim.

### F. FMLA

Finally, Defendant seeks dismissal of Ms. Brown's FMLA claim. *See* Dkt. 22 at 16–17. The FMLA guarantees eligible employees the right to take a total of twelve weeks of medical leave during any twelve-month period for a serious medical condition. *See* 29 U.S.C. § 2612(a)(1)(D). "The FMLA prohibits an employer from interfering with, restraining, or denying the exercise or attempted exercise of an employee's right to take FMLA leave." *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013) (citing 29 U.S.C. § 2615(a)(1)). "The statute also makes it unlawful for an employer to discharge or retaliate in any other manner against an individual for opposing the employer's unlawful FMLA practices." *Id*. (citing 29 U.S.C. § 2615(a)(2)).

"To state a prima facie claim for discrimination or retaliation under the FMLA, the plaintiff must allege that (1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 305 (5th Cir. 2021) (internal quotation marks and citation omitted). "To state a prima facie FMLA interference claim, a plaintiff must allege that (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Id.* at 306 (internal quotation marks and citation omitted).

Here, Ms. Brown summarily asserts in the First Amended Complaint that Defendant violated the FMLA when it terminated her employment. *See* Dkt. 16 at 7. Ms. Brown fails to specify whether she is pursuing an FMLA interference or FMLA retaliation claim, or both. *Id*. Under either type of FMLA claim, Ms. Brown has failed to plead sufficient facts that would entitle her to seek relief under the FMLA. *See* Dkt. 22 at 16. As Defendant points out, Ms. Brown does not allege that she is an eligible employee under the FMLA. *See Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 353 (5th Cir. 2006) (the FMLA defines an "eligible employee as an employee who has been employed (i) for at least 12 months by the employer . . . and; (ii) for at least 1,250 hours of service with such employer during the previous 12–month period, *excluding any employee* who is employed at a worksite at which, or within 75 miles of which, the employer employs less than 50 employees." (internal quotation marks and citation omitted)). Likewise, Ms. Brown fails to allege facts regarding the other elements of an

16

FMLA interference and/or retaliation claim. Accordingly, the Court finds that Ms. Brown's FMLA claim, as pled, is subject to dismissal.

### G. Repleading under Rule 15(a)

On a motion to dismiss for failure to state a claim, a "plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). A *pro se* litigant should generally be offered an opportunity to amend his or her complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Granting leave to amend is not required, however, if the plaintiff has already pleaded his [or her] 'best case.'" *Id.* at 768. The Court also can deny leave to amend where such an amendment would be futile. *See, e.g.*, *Isom v. U.S. Dep't of Homeland Sec.*, No. 4:20-cv-948, 2021 WL 2232052, *3 (E.D. Tex. Apr. 28, 2021), *R. & R. adopted*, 2021 WL 2224345 (E.D. Tex. June 2, 2021).

Although Ms. Brown has amended her complaint once, this is the Court's first opportunity to assess the sufficiency of Ms. Brown's allegations. It is therefore appropriate to afford Ms. Brown an opportunity to amend her pleadings in light of the deficiencies noted in this opinion. *See Poullard v. Gateway Buick GMC LLC*, No. 3:20-cv-2439, 2021 WL 2376721, at *17 (N.D. Tex. June 10, 2021); *see also Johnson v. Garcia*, No. 5:20-cv-137, 2021 WL 2451745, at *10 (E.D. Tex. Mar. 8, 2021) ("[T]he Court is not convinced Plaintiff's claims are so fantastic or frivolous to recommend dismissal with prejudice without allowing the *pro se* plaintiff an opportunity to amend to allege[] his best case."), *R. & R. adopted*, 2021 WL 1826961 (E.D. Tex. May 7, 2021). However, Ms. Brown is not entitled to amend her complaint as to her Fair Work Act 2009 and due process claims, as any amendment of these claims would be futile.

17

## IV. CONCLUSION

Based on the foregoing, **IT IS ORDERED** that Defendant's Motion to Dismiss (Dkt. 22) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The Motion is **DENIED** as to Ms. Brown's claims arising under the ADA.[6]

2. The Motion is **GRANTED** as to Ms. Brown's due process claim arising under the Fourteenth Amendment and wrongful termination claim arising under the Fair Work Act 2009. These claims are **DISMISSED WITH PREJUDICE**.

3. The Motion is **GRANTED** as to Ms. Brown's claims arising under the FFCRA, Title VII of the Civil Rights Act, the FMLA, as well as her retaliation claims under the ADEA, Title VII, and GINA. These claims are **DISMISSED WITHOUT PREJUDICE**.

4. Ms. Brown has **fourteen (14) days** from the date of service of this Memorandum Opinion and Order to amend her complaint as to all claims that have been dismissed without prejudice.[7]

**So ORDERED and SIGNED this 31st day of March, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE

---

[6] The Court, however, shares Defendant's concern regarding the cursory nature of Ms. Brown's pleading regarding her ADA claims. Because the Court is giving Ms. Brown an opportunity to amend her complaint, the Court expects the amended complaint will include additional allegations to support the ADA claims.

[7] On January 18, 2022, the First Amended Scheduling Order (the "Order") (Dkt. 57) was mailed to Ms. Brown at her address of record. On January 22, 2022, the Order was marked "Moved – Left No Address" and returned to the Court. *See* Dkt. 60. Therefore, Ms. Brown must notify the Clerk's Office of her current physical address. *See* LOCAL R. CV-11(d) ("A *pro se* litigant must provide the court with a physical address (i.e., a post office box is not acceptable) and is responsible for keeping the clerk advised in writing of his or her current physical address.").