IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CHELSA BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-395-KPJ |
| | § | |
| THE RENY COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant The Reny Company's ("Defendant") Motion for Summary Judgment (the "Motion") (Dkt. 59).[1] Plaintiff Chelsa Brown ("Ms. Brown") did not file a response. *See* Dkt. 67 (Defendant's Notice of No Response). Having considered the parties' briefing, the evidence, and the relevant law, the Motion (Dkt. 59) is **granted** and this case is dismissed with prejudice.

**I. BACKGROUND**

**A. Relevant Factual Background**[2]

This lawsuit stems from the termination of Ms. Brown's employment with Defendant. The following facts are taken from the declaration of Defendant's Human Resources Manager, Christina Benjamin ("Ms. Benjamin"). *See* Dkt. 59-1 at 41–45. In November 2019, Defendant hired Ms. Brown as a QA specialist in its Plano, Texas, office. *Id.* at 42. Ms. Brown's job duties

---

[1] On May 25, 2021, this case was referred to the undersigned for pretrial proceedings pursuant to 28 U.S.C. § 636. *See* Dkt. 12. On January 14, 2022, this matter was referred to the undersigned for all further proceedings and entry of judgment by consent of the parties. *See* Dkt. 56.

[2] The following facts are uncontroverted, as Ms. Brown did not file a response to the Motion.

1

included "processing medical bills for workers' compensation, Texas non-subscription, maritime, occupational accident, and liability claims." *Id.*

In March 2020, Defendant temporarily closed its Plano office due to the emerging COVID-19 pandemic and directed employees, including Ms. Brown, to work from home. *Id.* After authorities lifted some restrictions in May 2020, Defendant reopened its Plano office and asked employees to resume working in the office. *Id.* Ms. Brown initially returned to work in the Plano office, but later resumed working from home once her minor child's school resumed a remote learning schedule. *Id.* On September 9, 2020, the Plano Independent School District ("Plano ISD"), where Ms. Brown's child was enrolled, returned to in-person learning. *Id.* at 43. Upon learning that students in Plano ISD had resumed in-person learning, Defendant notified Ms. Brown that she needed to resume working in the Plano office by October 1, 2020. *Id.* Ms. Brown responded by expressing concerns about sending her child to school for in-person learning. *Id.* Ms. Benjamin explained to Ms. Brown that Defendant required employees to return to working in-person at the Plano office as schools reopened for in-person learning, and since Plano ISD had now re-opened, Ms. Brown was required to return to work in the Plano office. *Id.*

Ms. Brown failed to return to work in the Plano office on October 1, 2020. *Id.* Therefore, on October 5, 2020, Ms. Benjamin sent an email to Ms. Brown requesting an explanation as to why she was not present in the office. *Id.* Ms. Brown responded by stating that her child was still attending school via remote means, and that she did not feel comfortable sending him back to school for in-person learning. *Id.* Ms. Benjamin reiterated to Ms. Brown that Defendant expected her to resume working in the office now that Plano ISD had resumed in-person learning. *Id.* Ms. Benjamin directed Ms. Brown to report to work in the office the following day. *Id.*

The following morning, Ms. Brown's supervisor received a message from Ms. Brown that she was in the emergency room awaiting COVID-19 test results and had pneumonia in both lungs. *Id.* at 43, 70. Ms. Brown thereafter submitted a doctor's note indicating that she could not return to work for seven days. *Id*. at 43, 74 (doctor's note, dated October 6, 2020, stating that Ms. Brown "will be able to return to work . . . in 7 days"). Ms. Brown also provided a screenshot of a portion of her emergency room medical record, which stated that she was seen for "Suspected COVID-19 virus infection, Dehydration, and Pneumonia[.]" *Id.* at 75. Based on this documentation, Defendant "made several payments" to Ms. Brown under the Families First Coronavirus Response Act ("FFCRA"). *Id.* at 43.

One week later, on October 12, 2020, Ms. Brown emailed Ms. Benjamin that her COVID-19 test results were negative, but she was "still having symptoms, pneumonia, and difficulties with [her] breathing." *Id.* at 77. Ms. Brown stated she had returned to the emergency room that morning for more testing, and her doctor advised her not to return for work for another week. *Id.* One week later, Ms. Brown emailed Ms. Benjamin and explained that she was unable to return to work because she still had pneumonia. *Id.* at 79. Because her paid leave benefits under the FFCRA had been exhausted, Ms. Brown requested short-term disability paperwork, which Ms. Benjamin provided. *Id.* at 43–44, 79.

On November 3, 2020, Ms. Benjamin emailed Ms. Brown to request that she return her company-issued laptop via FedEx because "she would not be working for some time . . . [and] [Defendant] had a need for it." *Id.* at 44, 80. Ms. Brown did not respond to Ms. Benjamin's email regarding the laptop. *Id.* at 44. Nor did she respond to the follow-up email and letter Ms. Benjamin sent requesting that Ms. Brown return the laptop. *See id.* at 44, 81.

On November 20, 2020, Ms. Benjamin emailed Ms. Brown for an update on her medical condition and anticipated return-to-work date. *Id.* at 44. In response, Ms. Brown provided a note from her physician, Dr. Jeffrey Komenda, M.D. ("Dr. Komenda"), dated November 23, 2020, which stated:

> The patient's absence is physician advised due to illness or injury. This certifies that he or she has been under our care for this problem. [Ms. Brown] has been experiencing Covid 19 symptoms since October. She tested positive for pneumonia on October 6, 2020. Her first vist [sic] with us was on 10/20/2020 and her follow up was on 11/19/2020. She is still currently having symptoms of Covid 19, Bronchitis, Headache, Nausea, and breathing issues. *[Ms. Brown] would like to be able to work from home if possible due to current health issues.* She will follow up with us in 30 days to evaluate her health status.

*Id.* at 89 (emphasis added). On November 30, 2020, Ms. Benjamin responded:

> Thanks for sending along the letter [from Dr. Komenda]. I apologize for my delayed response, I was on vacation last week.
>
> I am sorry to hear that you are still feeling ill.
>
> As we previously discussed, your position does not have the option to work from home. Once you are cleared by your physician to return to the office, please let me know.
>
> In the meantime, I have sent you a FedEx label to use to return the office laptop. Please let me know when I can schedule a pickup.

*Id.* at 87. Ms. Brown did not respond to this email. *Id.* at 44. Nor did she return the laptop. *Id.*

On December 18, 2020, Defendant terminated Ms. Brown's employment. *Id.* at 91. The termination letter stated that Ms. Brown's employment was being terminated due to: "Job abandonment/failure to respond to requests for information, pursuant to the guidelines set forth in [Defendant's] Employee Manual." *Id.* The letter advised Ms. Brown that she was required to return the company-issued laptop within three business days, and that if she failed to do so, Defendant would "take further action to ensure the return" of the laptop. *Id.* Ten days later, Defendant reported the laptop as stolen property to the Plano Police Department. *Id.* at 95.

4

B. **Procedural History**

On April 27, 2021, Ms. Brown, proceeding *pro se*, commenced this lawsuit against Defendant. *See* Dkt. 3. On June 14, 2021, Ms. Brown amended her complaint (the "First Amended Complaint"). *See* Dkt. 16. In the First Amended Complaint, Ms. Brown asserted numerous claims against Defendant for "wrongful terminat[ion]" of her employment: (1) violations of the Americans with Disabilities Act of 1990 (the "ADA"); (2) violations of the FFCRA; (3) discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (4) violation of the Family and Medical Leave Act (the "FMLA"); (4) violation of due process under the Equal Protection Clause of the Fourteenth Amendment; (5) intentional infliction of emotional distress; (6) retaliation; (7) defamation; and (8) violation of "Section 385 Fair Work Act 2009." *See* Dkt. 16 at 3–7.

On June 28, 2021, Defendant moved to dismiss several of the claims raised in the First Amended Complaint. *See* Dkt. 22. Defendant subsequently filed the Motion for summary judgment that is presently before the Court. *See* Dkt. 59. On March 31, 2022, the Court granted in part and denied in part Defendant's motion to dismiss. *See* Dkt. 62. The Court ruled:

1. The Motion is **DENIED** as to Ms. Brown's claims arising under the ADA.

2. The Motion is **GRANTED** as to Ms. Brown's due process claim arising under the Fourteenth Amendment and wrongful termination claim arising under the Fair Work Act 2009. These claims are **DISMISSED WITH PREJUDICE**.

3. The Motion is **GRANTED** as to Ms. Brown's claims arising under the FFCRA, Title VII of the Civil Rights Act, the FMLA, as well as her retaliation claims under the ADEA, Title VII, and GINA. These claims are **DISMISSED WITHOUT PREJUDICE**.

*Id*. at 18. As to the claims that were dismissed without prejudice, the Court afforded Ms. Brown fourteen days to amend her complaint. *Id*. To date, Ms. Brown has not amended her complaint. Therefore, the First Amended Complaint remains the operative complaint. Only three claims remain pending in this matter: (1) violations of the ADA; (2) defamation; and (3) intentional infliction of emotional distress.

## II. LEGAL STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify "those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996).

In response, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence

of a genuine issue for trial." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show there is a genuine issue for trial. *Stults*, 76 F.3d at 656. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. LOCAL R. CV-56(c). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Evans v. Tex. Dep't of Transp.*, 547 F. Supp. 2d 626, 636 (E.D. Tex. 2007) (citing *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322), *aff'd*, 273 F. App'x 391 (5th Cir. 2008). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23.

### III. ANALYSIS

In its Motion, Defendant seeks summary judgment on all claims raised by Ms. Brown in her First Amended Complaint. *See* Dkt. 59. Because the Court has dismissed several of Ms. Brown's claims since Defendant filed the Motion, the Court's analysis is limited to the three claims currently pending before the Court—violations of the ADA, defamation, and intentional infliction of emotional distress. For the reasons set forth below, the Court finds that summary judgment is warranted in favor of Defendant on all three claims.

### A. Violations of the ADA

Defendant argues it is entitled to summary judgment on Ms. Brown's ADA claims. The Court first considers Defendant's arguments as to Ms. Brown's failure-to-accommodate claim. *See* Dkt. 59 at 18–19. "Under the ADA, it is unlawful for an employer to fail to accommodate the known limitations of an employee's disability." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011). A prima facie claim for failure to accommodate requires that: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013) (cleaned up). Defendant focuses its summary judgment argument on the second element, arguing there is no evidence showing that Defendant had knowledge of Ms. Brown's alleged disability and its consequential limitations. *See* Dkt. 59 at 18.

"Plaintiffs ordinarily satisfy the knowledge element by showing that they identified their disabilities as well as the resulting limitations to a [covered employer] and requested an accommodation in direct and specific terms." *Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020). "When a plaintiff fails to request an accommodation in this manner, [s]he can prevail only by showing that 'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents." *Id.* at 317–18 (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996)). As the Fifth Circuit explained in *Taylor*, mere knowledge of the disability is not enough; the employer must have also understood "the limitations experienced by the employee as a result of that disability." *Id.* at 164. This is because:

> some impairments may be disabling for particular individuals but not for others, depending on the stage of the disease or the disorder, the presence of other

> impairments that combine to make the impairment disabling or any number of other factors. Thus, while a given disability may limit one employee (and therefore necessitate a reasonable accommodation), it may not limit another. For this reason, the ADA does not require an employer to assume that an employee with a disability suffers from a limitation. . . . Accordingly, it is incumbent upon the ADA plaintiff to assert not only a disability, but also any limitation resulting therefrom.

*Id.* (cleaned up).

In this case, Defendant argues Ms. Brown "cannot adduce any admissible summary judgment evidence that demonstrates [Defendant's] knowledge of any limitations imposed by her alleged disability." *See* Dkt. 59 at 19. As Defendant points out, the only evidence it received from Ms. Brown regarding her request for accommodation was Dr. Komenda's letter stating that Ms. Brown was "currently having symptoms of Covid 19, Bronchitis, Headache, and breathing issues" and "would like to be able to work from home if possible due to her current health issues." *Id.* at 19–20. While this letter may have provided notice to Defendant of Ms. Brown's alleged impairments, a reasonable trier of fact could not find that this letter provided notice to Defendant of any limitations arising from Ms. Brown's alleged impairments. *See Taylor*, 93 F.3d at 165 n.10 (holding doctors' affidavits were insufficient to provide notice of the plaintiff's limitations because they failed to identify "(1) the specific disability; (2) any limitations resulting therefrom, or; (3) any reasonable accommodations required"). And although Ms. Brown also provided Defendant with a doctor's note and medical records from her first emergency room visit for "Suspected COVID-19 virus infection, Dehydration, and Pneumonia," that documentation also did not identify any limitations resulting from Ms. Brown's alleged medical diagnoses. Nor has Ms. Brown presented any evidence from which a reasonable jury could infer that the extent of her limitations and necessary accommodations were "open, obvious, and apparent" to Defendant. *See Smith*, 956 F.3d at 317–18. Therefore, Defendant is entitled to summary judgment on this claim. *See Taylor*, 93 F.3d at 163–64 (affirming grant of summary judgment because the plaintiff failed to adduce

9

"evidence which would allow a reasonable trier of fact to find that [the entity] knew of [the plaintiff's] limitations").

Defendant next contends it is entitled to summary judgment on Plaintiff's discriminatory discharge claim under the ADA. "In a discriminatory-termination action under the ADA, the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). The Court will apply the *McDonnell Douglas* burden-shifting analysis, as Ms. Brown has not argued at any point in this case that she has direct evidence of discrimination.

Under the *McDonnell Douglas* approach, a plaintiff must demonstrate a prima facie case of discrimination. *Id*. To establish a prima facie case under the ADA, a plaintiff must show that (1) she is an individual with a disability within the meaning of the ADA; (2) she was qualified for her job; and (3) "an adverse employment decision was made solely because of her disability." *Owens v. Trane Co.*, No. 97-41019, 1998 WL 307621, at *1 (5th Cir. 1998). If the plaintiff succeeds in establishing her prima facie case, then the defendant must articulate a legitimate, nondiscriminatory reason for the termination. *See E.E.O.C.*, 773 F.3d at 694. Finally, the burden shifts back to the plaintiff to show the defendant's proffered reason is pretextual. *See id.*

Defendant argues Ms. Brown is unable to establish a prima facie case. *See* Dkt. 59 at 20. Defendant further argues that even if Ms. Brown could make a prima facie case, she has not met her burden of producing evidence showing pretext. *Id*. at 21. The Court agrees. "In response to a motion for summary judgment, an employee must present 'substantial evidence' that the employer's legitimate, nondiscriminatory reason for termination is pretextual." *See Delaval v.*

*PTech Drilling Tubulars, LLC*, 824 F.3d 476, 480 (5th Cir. 2016) (internal citation omitted). "Pretext is established either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* (cleaned up). Defendant's stated reason for terminating Ms. Brown's employment was "job abandonment" and "failure to respond to requests for information." *See* Dkt. 59-1 at 91. Ms. Brown did not file a response to Defendant's Motion, and thus, she has not presented evidence demonstrating the falsity of Defendant's proffered reasons or that Defendant was motivated by any unlawful discriminatory animus. Nor has Ms. Brown presented evidence of disparate treatment. Because Ms. Brown has presented no evidence of pretext, summary judgment is granted in favor of Defendant on Ms. Brown's discriminatory discharge claim under the ADA.

### B. Defamation

Defendant next contends it is entitled to summary judgment on Ms. Brown's defamation claim. *See* Dkt. 59 at 31–34. In the First Amended Complaint, Ms. Brown cited 28 U.S.C. § 4101 as the basis for her defamation claim. *See* Dkt. 16 at 6. That statute provides a definition of "defamation" in the context of foreign judgments. *See* 28 U.S.C. § 4101(1). This definitional section is a part of a broader statutory scheme prohibiting a domestic court from enforcing a foreign judgment for defamation unless certain prerequisites are met. *See* 28 U.S.C. § 4102 (relating to the "[r]ecognition of foreign defamation judgments"); *see also Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 488 (5th Cir. 2013) (holding this statutory scheme is implicated only where a party has obtained a foreign judgment for defamation). Based on the allegations raised in the First Amended Complaint, there is plainly no foreign defamation judgment at issue in this case. Additionally, there is no private right of action under 28 U.S.C. § 4101. *See James Roa v. City of Denison*, No. 4:18-cv-168, 2019 WL 1306212, at *10 n.13 (E.D. Tex. Feb. 18, 2019) ("§ 4101

does not contain a private cause of action."). Thus, Ms. Brown has not stated a claim for relief under 28 U.S.C. § 4101, and Defendant is entitled to summary judgment on this claim.

In its summary judgment briefing, perhaps in consideration of Ms. Brown's *pro se* status, Defendant also argues that Ms. Brown's defamation claim fails under Texas law. *See* Dkt. 59 at 31–34. The Court agrees. Ms. Brown's defamation claim is based on a Plano Police Department Incident Report that identified the company-issued laptop as lost or stolen. *See* Dkt. 16 at 7. Ms. Brown asserted in the First Amended Complaint that Defendant "falsely accus[ed] [her] of laptop theft" and "negligently defamed" her. *Id*.

Under Texas law, "[d]efamation is a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006) (citing *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.)). "For a plaintiff who is not a public figure," such as Ms. Brown, "to establish a defamation claim under Texas law, the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting negligently with regard to the truth of the statement." *Winegarner v. City of Coppell*, No. 3:05-cv-1157, 2007 WL 9711759, at *3 (N.D. Tex. July 30, 2007) (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)), *R&R adopted*, No. 3:05-cv-1157, 2007 WL 9711760 (N.D. Tex. Aug. 27, 2007).

Under Texas law, a claim for defamation may be avoided if the defendant's statements were qualifiedly privileged. An employer has a qualified privilege for communications made in the course of an investigation following a report of employee wrongdoing. *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995) (citation omitted) ("[A]n employer has a conditional or qualified privilege that attaches to communications made in the course of an

12

investigation following a report of employee wrongdoing."). "The privilege remains intact so long as communications pass only to persons having an interest or duty in the matter to which the communications relate." *Id.* (first citing *Butler v. Cent. Bank & Tr. Co.*, 458 S.W.2d 510, 514–15 (Tex. App.—Dallas 1970, writ dism'd); then citing *Bergman v. Oshman's Sporting Goods, Inc.*, 594 S.W.2d 814, 816 (Tex. App.—Tyler 1980, no writ)). "Proof that a statement was motivated by actual malice existing at the time of publication defeats the privilege." *Randall's Food Markets, Inc.*, 891 S.W.2d at 646. Here, the incident report at issue was generated in the course of investigating a report of possible employee wrongdoing. Defendant presented evidence that its report to the Plano Police Department was not made with malice, but to "ensure the return of [its] property" after Ms. Benjamin's "numerous, unsuccessful attempts . . . to secure [a] voluntary return" of the laptop.[3] *See* Dkt. 59-1 at 93. As such, a qualified privilege would apply. *See Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 430 (5th Cir. 2009) ("[A] qualified privilege extends to all accusations or comments about an employee by his employer, made to a person having an interest or duty in the matter to which the communication relates." (cleaned up)). Therefore, even if Ms. Brown asserted her defamation claim under Texas law, it would be subject to dismissal.

### C. Intentional Infliction of Emotional Distress

Defendant argues the Court should grant summary judgment in its favor on Ms. Brown's claim for intentional infliction of emotional distress because: (1) the claim is premised on the same conduct as Ms. Brown's statutory claims; and (2) Ms. Brown "cannot support any of the essential elements of her claim with competent summary judgment evidence." *See* Dkt. 59 at 27–29.

---

[3] Ms. Benjamin explained in her declaration:
> When I made [Defendant's] complaint to the Plano Police Department I simply indicated that [Defendant] requested return of the laptop on multiple occasions, but [Ms. Brown] refused to return it as requested. When [Defendant] later received [Ms. Brown's] laptop on December 29, 2020, I contacted the Plano Police Department to explain that the property had been returned and the complaint against [Ms. Brown] should be canceled.

*See* Dkt. 59-1 at 45.

Under Texas law, "a plaintiff may not bring an [intentional infliction of emotional distress] claim when other statutory remedies are available for the underlying conduct." *Pacheco v. Zanios Foods, Inc.*, No. EP-06-cv-185, 502 F. Supp. 2d 508, 512 (W.D. Tex. 2006) (citing *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004)). Intentional infliction of emotional distress "is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (quoting *Zeltwanger*, 144 S.W.3d at 447). "Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill." *Id*. As such, "a plaintiff cannot bring a claim for intentional infliction of emotional distress against a defendant where the plaintiff could bring a state statutory claim or other tort claim against that defendant based on the same conduct alleged." *Rawlings v. Travelers Prop. Cas. Ins. Co.*, No. 3:07-cv-1608, 2008 WL 2115606, at *4 (N.D. Tex. May 20, 2008) (first citing *Zeltwanger*, 144 S.W.3d at 441–51; then citing *Creditwatch, Inc.*, 157 S.W.3d at 815–17).

Here, Ms. Brown asserted in the First Amended Complaint that Defendant's "discriminatory, harassing and retaliatory actions" gave rise to her claim for intentional infliction of emotional distress. *See* Dkt. 16 at 6. Ms. Brown explicitly relied on the same factual allegations for this claim as she did for her other statutory claims. *See id.* (Ms. Brown's assertion that she was "re-alleg[ing] and incorporat[ing]" all previous allegations for her emotional distress claim). Ms. Brown's claim is thus clearly premised on the same alleged conduct as her other statutory claims, including her ADA claim. Ms. Brown has not presented any evidence or argument suggesting that her intentional infliction of emotional distress claim is based on conduct that was different from her other claims. Summary judgment is therefore appropriate on Ms. Brown's claim for intentional infliction of emotional distress, regardless of whether she can succeed on her other statutory

claims. *See, e.g.*, *Stephenson v. Nokia, Inc.*, No. 3-06-cv-2204, 2008 WL 2669492, at *8 (N.D. Tex. May 1, 2008) (granting summary judgment on intentional infliction of emotional distress claim where disability discrimination and intentional infliction of emotional distress claims were based on the same facts).

## IV. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, the Motion (Dkt. 59) is **GRANTED** as to Plaintiff's ADA, defamation, and intentional infliction of emotional distress claims. Plaintiff's lawsuit is hereby **DISMISSED WITH PREJUDICE**.

**So ORDERED and SIGNED this 21st day of June, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE